## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TAP PILAM COAHUILTECAN | § | |
| NATION, SAN ANTONIO MISSIONS | § | |
| CEMETERY ASSOCIATION, | § | |
| RAYMOND HERNANDEZ | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. **5:19-cv-1084** |
| ALAMO TRUST, INC, DOUGLASS W. | § | |
| MCDONALD, CEO OF THE ALAMO | § | |
| TRUST, TEXAS GENERAL LAND | § | |
| OFFICE AND GEORGE P. BUSH, | § | |
| COMMISSIONER OF THE GENERAL | § | |
| LAND OFFICE OF THE STATE OF | § | |
| TEXAS AND THE TEXAS | § | |
| HISTORICAL COMMISSION, CITY | § | |
| OF SAN ANTONIO, TEXAS | § | |
| *Defendants.* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTION

TO THE HONORABLE COURT:

NOW COMES Tap Pilam Coahuiltecan Nation, San Antonio Missions Cemetery Association, and Raymond Hernandez, the Plaintiffs, complaining of Douglass W. McDonald, Chief Executive Officer of the Alamo Trust, Inc. (hereinafter, "ALAMO CEO") and Alamo Trust, Inc (hereinafter, "ATI"), Texas General Land Office (hereinafter, "GLO") and George P. Bush, Commissioner of the General Land Office of the State of Texas (hereinafter, "COMMISSIONER BUSH"), and The Texas Historical Commission (hereinafter, "THC"), and The City of San Antonio, Texas (hereinafter, "COSA"), the Defendants, and for causes of action shows:

## A. INTRODUCTION

1.      This case is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendant's restriction on Plaintiffs' right to participate in the human remains protocols adopted by the Defendants. Specifically, Plaintiff Tap Pilam Coahuiltecan Nation (hereinafter, "TPCN") is a tribal community of American Indians who trace their ancestry to the Spanish Colonial Missions of Texas and Northeastern Mexico, including Mission San Antonio de Valero, which is also known as "The Alamo."   Plaintiff Raymond Hernandez is an enrolled member of the Tap Pilam Coahuiltecan Nation who is a direct descendant of ancestors from Mission San Antonio de Valero and serves on the Tribal Counsel of the Nation.  Plaintiff San Antonio Missions Cemetery Association is a nonprofit association of lineal descendants of those buried in the San Antonio Missions Cemeteries, including the Mission San Antonio de Valero Cemetery. Plaintiffs are the next of kin and the ancestors to the remains buried at the Alamo Mission.

2.      All similar and related projects currently and, in the recent past, have utilized human remains protocols that allowed the Tap Pilam Coahuiltecan Nation to participate as next of kin. However, in this case, Defendants have selectively applied and interpreted federal laws, not applicable to the project by their own admission, in a manner that only grants access to federally recognized Indian tribes and ignore other federal laws and the City of San Antonio's Unified Development Code.  Specifically, the City's UDC mandates procedures and protocols under 36 CFR Part 800 of the National Historic Preservation Act, which requires the participation of next of kin and Indian tribes regardless of federal recognition.  Such arbitrary decisions to pick and choose which laws to apply is not only confusing, but was calculated to exclude the Tap Pilam

Coahuiltecan Nation from participating on the Archaeological Committee established by the GLO and ATI which developed the human remains protocols on the project.

3.      Further, the Defendants are publicly stating that there is no cemetery located at the Alamo.  This assertion is intellectually dishonest and being used solely to skirt federal, state and local laws designed to protect historic cemeteries.  It is common knowledge that every Spanish Colonial Mission established and maintained a cemetery, and there is ample evidence that a cemetery was established and continues to exist at the Alamo.  In fact, the surviving burial book of Mission San Antonio de Valero contains over 1,300 entries. Most of these burials are of American Indians, but the book also records burials of Presidio Soldiers, settlers and servants of various racial categories.  Further, the "Alamo Cemetery" was recorded in 2005 in the Bexar County Cemetery Survey as Cemetery ID BX-C299 and appears on the THC Historic Sites as and Archaeology Sites Atlases as Cemetery ID BX-C299 occupying the totality of the current Alamo Plaza.  In addition, on or about October 15, 2018, the TPCN and the San Antonio Missions Cemetery Association filed a Notice of the Existence of an unknown or abandoned Cemetery in the Real Property Records of Bexar County, Texas. Further, on or about October 30, 2018, Plaintiffs submitted a Historical Texas Cemetery Application for the Mission San Antonio de Valero Cemetery ("Application") to the Texas Historical Commission, which was granted on May 10, 2019, resulting in a Declaration of Dedication by the THC filed in the Real Property Records of Bexar County stating that "The Texas Historical Commission, an agency of the State of Texas, does hereby certify and declare: that a cemetery deemed worthy of recognition for its historic associations…has been recognized by the Texas Historical Commission as a Historic Texas Cemetery…" and included a map of the cemetery which includes all of Alamo Plaza and the Alamo Chapel. Defendants' absurd stance that a cemetery does not exist at the Alamo is

solely an attempt to skirt the Texas Health and Safety Code, the City's Unified Development Code and federal statutes which protect cemeteries and require the notification and inclusion of next of kin in the archaeological process at such sites.  There is no doubt that the Defendants are purposely making spurious claims to exclude the Plaintiffs from the process at all costs.

4.      Defendant Texas Historical Commission has issued archaeological permits for similar projects in the past that required archival and boundary delineation studies for digs at cemeteries. Specifically, the THC has always required a cemetery boundary delineation study to find the boundaries of historic cemeteries and an archival study to determine the historical significance of a cemetery prior to allowing digging at the site.  In this case, the THC acknowledged the need for more study but did not require it, placing the Alamo cemetery at risk.  The THC's arbitrary decision is unconstitutionally vague and ambiguous as it excludes the study when they have always required it in the past.

5.      It should also be pointed out that Plaintiffs were denied the use of the Alamo Chapel for religious ceremony.  The Alamo Chapel has been a place of religious practice for the Mission Indian community for many years.   TPCN, members of the Yanaguana Tap Pilam Native American Church of the Americas, and various Christian denominations have been conducting an annual Sunrise Memorial Ceremony in the Alamo Chapel during *La Semana de Recuerdos* (Week of Remembrances) held each September.  Specifically, on September 7, 2019, Plaintiffs TPCN and Raymond Hernandez were denied permission to gather inside the Alamo Chapel for a prayer service which has been a tradition allowed by the Alamo for the past 24 years, despite allowing tourists and members of the public to enter.

6.      Plaintiffs seek a declaration that Defendant violated their clearly established constitutional rights as set forth in this Complaint; a declaration that Defendants' actions to exclude the Plaintiffs from participating in the Archaeology Committee of the Human Remains Protocol violates the United States Constitution and 42 U.S.C. § 1983 as set forth in this Complaint; Defendants actions to prevent Plaintiffs from exercising their religion violates clearly established constitutional rights as well as the Texas Religious Freedom Act and the American Indian Religious Freedom Act of 1978 ("AIRFA"). Plaintiffs further seek a preliminary and permanent injunction enjoining the enforcement of Defendants' policy to exclude the Plaintiffs from the Human Remains Protocol Process as set forth in this Complaint; and nominal damages for the past loss of Plaintiffs' constitutional rights. Plaintiffs also seek an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## B.      PARTIES

7.      Plaintiff Tap Pilam Coahuiltecan Nation, is an Indian tribe headquartered at 1313 Guadalupe St., San Antonio, Texas 78207.

8.      Plaintiff San Antonio Missions Cemetery Association is a Texas nonprofit corporation located at 1313 Guadalupe St., Suite 104, San Antonio, Texas 78207.

9.      Plaintiff Raymond Hernandez is an individual residing at 273 Nicks Road, Comfort, Texas 78013.

10.     Defendant Alamo Trust, Inc., a Texas nonprofit corporation, which may be served with summons at its registered agent, Capitol Corporate Services, Inc., located at 206 E. 9th Street, Suite 1300, Austin, TX 78701-4411.

11.     Defendant Douglass W. McDonald, is sued in his official capacity as the CEO of the Alamo Trust and may be served by personal delivery of the summons to 300 Alamo Plaza, San Antonio, Texas 78205.

12.     Defendant the Texas General Land Office is an administrative agency of the State of Texas. Service of process may be accomplished by personal delivery of the summons to Commissioner George P. Bush, at 1700 N. Congress Ave., Suite 935, Austin, Texas 78701-1495.

13.     Defendant George P. Bush is sued in his official capacity as Commissioner of the Texas General Land Office. Service upon Commissioner Bush may be accomplished by personal delivery of the summons to him, at 1700 N. Congress Ave., Suite 935, Austin, Texas 78701-1495.

~~14.~~     Defendant Texas Historical Commission is an administrative agency of the State of Texas and may be served by delivering, in person, the summons to its chairman John L. Nau, III or its executive director Mark Wolfe at 1511 Colorado Street, Austin, Texas 78701.

15.     Defendant City of San Antonio is a home rule municipality located primarily in Bexar County, Texas and may be served by personal delivery of the summons to Mayor Ron Nirenberg, at 115 Plaza de Armas, 2nd Floor, San Antonio, Texas 78205.

## C.     JURISDICTION/VENUE

16.     This action arises under the Constitution and laws of the United States.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343 as well as 42 U.S.C. § 1996 otherwise known as The American Indian Religious Freedom Act ("AIRFA").

17.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general

legal and equitable powers of this Court. Plaintiffs' claim for nominal damages is authorized by 42 U.S.C. § 1983. Pendent claims arise under the *Texas Civil Practices and Remedies Code* section 110, also known as the Texas Religious Freedom Act.

18.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. Venue is also proper under Texas Natural Resources Code §191.173 because Plaintiffs are seeking restraining orders and injunctive relief to restrain and enjoin violations or threatened violations of the Texas Antiquities Code.

### D.     BACKGROUND/FACTS

19.     This case stems from the initiative by the City of San Antonio ("COSA"), Alamo Trust, Inc. and the Texas General Land Office ("GLO") to redevelop Alamo Plaza and the surrounding area, including the San Antonio de Valero Mission ("Alamo"), officially known as the Alamo Redevelopment Plan (hereinafter, "Alamo Plan").

20.     As a part of the process to redevelop the Alamo Complex, the grounds surrounding the Alamo Chapel will be transformed by extensive construction that is required by the Alamo Plan. The Alamo Plan calls for the construction of a museum, the lowering of the grade of the existing plaza, relocating the Alamo Cenotaph, reconstructing the cannon ramps from the 1836 battle, planting over 100 trees and adding concrete sidewalks and various other renovations.

21.     On or about 2014, the COSA established the twenty-one member Alamo Citizens Advisory Committee ("ACAC") to "create a vision and guiding principles for the redevelopment of Alamo Plaza and the surrounding area, and assisting in the development of the scope of work for a request for qualifications (RFQ) for development of a master plan for the Alamo area."

7

Ramon Vasquez, a member of the Tap Pilam Coahuiltecan Nation ("TPCN") was appointed by San Antonio Mayor Julian Castro to serve on the ACAC as the Mayor's Representative for the history and archeological category.

22.     On or about December 2014, the COSA adopted the Guiding Principles developed by the Citizens Advisory Committee that included the cemetery protections.   See attached protocol as Exhibit "A".

23.     On October 15, 2015, the San Antonio City Council executed a cooperative agreement among the GLO, Alamo Endowment Board, and the City of San Antonio regarding the Joint Master Plan for the Alamo Historic District and the Alamo Complex. The Agreement outlines the roles and responsibilities of each party as well as the management and oversight structure for the master plan's development and adoption. The agreement established the Vision and Guiding Principles developed by the ACAC as the foundation for the Master Plan and expanded the Committee's membership.

24.     Mr. Vasquez, serving on the ACAC, repeatedly raised the issue of the existence of the Mission San Antonio de Valero Cemetery ("Cemetery") at the Alamo complex and the applicability of the City of San Antonio's Unified Development Code.

25.     Further, in the summer of 2016, TPCN provided on site tribal monitors for the first excavation at the Alamo under the Alamo Plan.  In July 2016, the TPCN were asked by the COSA, Alamo Trust and GLO to bless the Alamo Chapel and project. Later that summer, human remains were discovered in an archeological dig on the Alamo Complex.  The remains were turned over by a City Archeologist to TPCN for reinterment on the Alamo Complex where they were discovered.

26.     On April 17, 2017 Mr. Vasquez submitted human remains protocols to the Alamo Plan consultants, at their request, which included TPCN representation as the culturally affiliated tribal community. However, things took a dark turn at the end of 2017.  Specifically, Douglas McDonald assumed control of the Alamo Plan and the project began to deviate from its initial course with respect to protections for the cemetery and its compliance with federal, state and local regulations

27.     On August 27, 2018, Mr. Vasquez sent the entire ACAC, THC, COSA, GLO, National Park Service, and Alamo Trust a letter addressing concerns that the required regulatory processes regarding cemeteries had not been built into the COSA lease agreement with GLO and advising them to do so.  See letter attached as Exhibit "B".

28.     On October 5, 2018 Raymond Hernandez, Tribal Council Member of the TPCN, submitted concerns to the Historic Design and Review Committee of COSA ("HDRC") that cemetery protection laws, including the National Historic Preservation Act, were not being followed by the GLO and Alamo Trust.  See letter attached as Exhibit "C"

29.     On October 18, 2018 the THC confirmed in a letter to Mr. Vasquez that the "Alamo Cemetery" was recorded in 2005 in the Bexar County Cemetery Survey as Cemetery ID BX-C299 and appears on the THC Historic Sites and Archaeology Sites Atlases as occupying the totality of the current Alamo Plaza.  The letter also addressed concerns regarding cemetery protections by concluding that they cannot be fully addressed until a "comprehensive archeological and archival study" is conducted.  See letter attached as Exhibit "D".

30.     As a result of the change in policy to exclude cemetery protections and standard archaeological practices, the Plaintiffs became concerned as the Alamo and the grounds

surrounding it contains a historically documented mission cemetery that includes the remains of many ancestors of the Tap Pilam Coahuiltecan Nation, other federally recognized tribes, Spanish soldiers, Canary Islander settlers, African settlers, Mexican soldiers, Battle of the Alamo Defenders and even a former provincial Governor of Texas.  In fact, the burial book of the Mission San Antonio de Valero contains over 1,300 entries. As a result of the concerns, on or about October 15, 2018, the TPCN and the San Antonio Missions Cemetery Association filed a Notice of the Existence of Abandoned or Unknown Cemetery in the Real Property Records of Bexar County, Texas. See Real Property records attached hereto as Exhibit "E".

31.    Sec. 35-634 of the City of San Antonio's Unified Development Code entitled "Cemeteries" states that: "All applicants for permits, excluding burial permits, affecting cemeteries shall be referred to the city historic preservation officer for the purpose of determining whether or not the cemetery is historically, culturally, architecturally, or archaeologically exceptional or significant. If the cemetery is determined by the city historic preservation officer to be exceptional or significant, any proposed change, excluding burials, must be presented to the historic and design review commission for approval of planned work. If a court of competent jurisdiction has granted permission for cancelation or destruction of such cemetery, any plans for new construction must be approved thereafter by the historic and design review commission before construction commences. The historic and design review commission shall be governed in its recommendations by regulations set forth in Texas state law for cemeteries excluding burial permits." This procedure is necessary to avoid, minimize or mitigate any adverse effects on cemeteries such as the Cemetery at the Alamo.  Defendants' have failed to follow this provision and continue to publicly deny the existence of a cemetery at the Alamo Complex despite ample evidence.

10

32.     Further, Sec. 35-633(a) of the City of San Antonio's Unified Development Code states that: "In evaluating archeological studies and treatment plans for archeological sites, the historic preservation officer and the HDRC will apply the criteria for effect to, and significance of, archeological sites in the Antiquities Code of Texas and in the regulations of the National Advisory Council on Historic Preservation, treatment of archeological properties under authority of the executive director of the Advisory Council, National Historic Preservation Act, and Executive Order 11593." Put simply, the City of San Antonio's Unified Development Code not only requires certain steps and plans to mitigate adverse effects to historical and archeological sites, it mandates that the National Historical Preservation Act procedures applies.  The Act requires certain individuals, such as the Plaintiffs, the opportunity to participate in the process. Such plans and procedures are necessary to seek ways to avoid, minimize or mitigate any adverse effects on projects such as the Alamo Plan.  At this stage of planning all Parties operated under the premise that all local, state and federal rules related to archaeological sites and cemeteries applied. In 2016, Mr. Vasquez and the TPCN were tasked with assisting the Alamo Plan consultants with developing the Native American history portion of the Alamo Plan.  On December 23, 2016, at the request of Alamo Plan consultants, Mr. Vasquez submitted a proposal for development of the Alamo Narrative on the site, which highlights the families who descend from the Alamo Mission and are current members of the TPCN.  See proposal attached hereto as Exhibit 'F'.

33.     Further, on or about October 30, 2018, Plaintiffs submitted a Historical Texas Cemetery Application for the Mission San Antonio de Valero Cemetery ("Application"). See application attached hereto as Exhibit "G".

34.     On or about January 24, 2018, the Application was heard by the Antiquities Advisory Committee of the THC.  Alamo Trust filed a letter with the THC asking that the designation be denied for the reason that "there was no Historic Cemetery on the Alamo property."  The Commissioners discussed the Application and decided to "table" and NOT reject the Application and tasked that the THC staff to work with Plaintiffs to better define the cemetery's boundaries and bring back a recommendation for consideration. See letter denying a cemetery exists attached as Exhibit "H".

35.     On or about January 26, 2019, Plaintiffs contracted with GTI Environmental, LLC, a professional archeological consulting firm, to generate a report citing the archival, archeological and historical evidence of the boundaries of the Mission Cemetery. See report attached hereto as Exhibit "I".

36.     On or about February 6, 2019, Ramon Vasquez, authorized representative of the Plaintiffs, met with THC staff in Austin to discuss next steps. In attendance were Jenny McWilliams, Charles Sadnick and Carylin Hammons.  Also, Holly Houghton, Tribal Historic Preservation officer for the Mescalero Apache Tribe, whom also have historic ties with the Mission but no known ancestors, attended at the Plaintiff's request.

37.     On February 8, 2019, the THC sent a letter to Alamo Trust with regard to the human remains protocols filed with the Antiquities Permit that "many of the actions proposed in this draft, including leaving unintentionally encountered interments *in situ* and/or moving remains to another designated space, require a designated "cemetery" as defined in the Health and Safety Code Chapter 711.011[4]" and that THC recommended that ALAMO TRUST and GLO assist in the effort to define the Mission Valero/Alamo Cemetery boundaries and develop a

comprehensive human remains treatment plan that includes a cemetery management plan that complies with the state law. See letter attached hereto as Exhibit "J".

38.    On or about February 9, 2019, Ramon Vasquez, Tap Pilam Tribal Council member Linda Ximenes and Tap Pilam Tribal member Sonia Jimenes, met with Victoria Gonzales, the Senior Policy Advisor for San Antonio Mayor Ron Nirenberg, Kay Hindes, City of San Antonio Archaeologist, and Rhea Roberts representing the City Manager of the City of San Antonio. Mrs. Gonzales informed them that the Mayor authorized the City Archaeologist to work with Tap Pilam Coahuiltecan Nation and the San Antonio Missions Cemetery Association to define the boundaries per the THC mandate.

39.    Shortly thereafter, Plaintiffs received correspondence from Carylin Hammons, current THC staffer, encouraging the Plaintiffs to limit the boundaries of the application only to the Alamo Chapel and not the grounds. See letter attached hereto as Exhibit "K".

40.    Plaintiffs also received correspondence from Mark Denton, former Senior Lead Reviewer of the THC that stated that in his professional opinion the mission cemetery boundaries should be:

> "Houston Street to Crocket Street for the north/south boundaries, the back (east side) of the chapel as the eastern boundary line and the street curve immediately west of the Campo Santo[1] as the western boundary".

This opinion closely models that originally requested in Plaintiffs' Application. See letter attached hereto as Exhibit "L".

---

[1] Campo Santo is a colonial-era Spanish term for cemetery, literally "holy ground".

41.     On or about February 19, 2019, Ramon Vasquez, Tap Pilam Tribal Council Member, Raymond Hernandez, Tap Pilam Tribal member and Researcher, Izel Lopez met with Kay Hindes, City of San Antonio's Archaeologist and Rhea Roberts, City of the San Antonio City Manager's Office in order to update them regarding the position of Carylin Hammons trying to limit the boundaries of the Mission Cemetery to the Alamo Chapel alone and excluding the remainder of the documented Mission Cemetery.  Hindes stated that she believed the boundaries for the Cemetery should include the inside of the Chapel, the area in front of the Chapel and in front of the Federal Post Office on Houston Street, which are in line with the Plaintiffs' original Application and the opinion of Mark Denton.

42.     On or about March 11, 2019, Ramon Vasquez emailed Charles Sadnick of the THC informing him that the San Antonio Mayor had instructed the City Archaeologist to work with Plaintiffs to define the Mission Cemetery Boundaries and that this process would be completed in time for the July 2019 quarterly meeting of the THC.  Sadnick responded that the THC "looks forward to receiving your resubmission, and our staff remains on hand to assist". See email attached as Exhibit "M".

43.     On or about March 14, 2019, Mr. Vasquez after repeated requests and denial for inclusion on the Archaeological Advisory Committee under the Human Remains Protocols adopted by the GLO/ATI, received an email response from Casey Hanson of the THC stating:

        "the Alamo is not a Federal Agency and the project has no Federal hook so there is no reason that the ACHP[2] should have been notified about the project.  If they were notified, the ACHP could not and would not agree to be a consulting party because this is not

---

[2] The Advisory Council on Historic Preservation (ACHP) is an independent federal agency that promotes the preservation, enhancement, and productive use of our nation's historic resources, and advises the President and Congress on national historic preservation policy.

Section 106 and there is no Federal Agency to advise.  Similarly, the ACHP would never make the decision for or against including any consulting party.  I don't think they are being truthful.  As far as I know the Alamo and the GLO are making the decisions and I am not aware of anyone with the authority besides those entities that make those decisions.  **In my opinion, if they do not include you, as a representative of one of the major descendant communities, then the committee is a complete sham**."

See letter attached hereto as Exhibit "N".

44.     On or about March 29, 2019 Plaintiffs were notified by Charles Sadnick that the GLO submitted a competing application for Historic Cemetery Designation that included only the Alamo Chapel.  Admitting for the first time of the existence of the Cemetery at the Alamo, this was a dramatic reversal by the GLO who could no longer hold the intellectually dishonest position that no such cemetery exists.  However, the extremely narrow boundary definition was strategically designed to achieve their goal of not complying with local, state and federal laws protecting cemeteries and archaeological sites on the project.  See Application attached hereto as Exhibit "O".

45.     Further, on or about April 1, 2019, the Plaintiffs received a report from GTI Environmental, LLC which shows ample evidence that the boundaries of the Mission Cemetery extend outside the walls of the Alamo Chapel, including a burial site for non-baptized Indians outside of the walls of the Mission.  See Report attached hereto as Exhibit "I".

46.     It should be pointed out that while the Plaintiffs were being excluded by GLO/Alamo Trust from the Archaeological Advisory Committee on the Alamo Plan, TPCN and other lineal descendant groups, were engaged by the COSA to participate on the Maverick Plaza/La Villita

Project and to develop its human remains protocols.  The Maverick Plaza site is the 2nd location of Mission San Antonio de Valero and is historically and archaeologically similar to the Alamo Complex, which is the 3rd location of Mission San Antonio de Valero. The Maverick Plaza site is physically located just a few blocks south of the Alamo Complex. The Human Remains Protocols on the Maverick Plaza project state "Historic burials and cemeteries, including Native American burials and cemeteries, shall be treated in accord with provisions of Chapters 711 and 715 of the Health and Safety Code."  TPCN is currently actively participating on the Maverick Plaza project.

47.    On May 10, 2019, the THC approved the Historic Cemetery Designation for the Mission San Antonio de Valero Cemetery.  A Declaration of Dedication was filed by the THC in the Real Property Records of Bexar County stating that "The Texas Historical Commission, an agency of the State of Texas, does hereby certify and declare: that a cemetery deemed worthy of recognition for its historic associations…has been recognized by the Texas Historical Commission as a Historic Texas Cemetery…" and included a map of the cemetery which includes all of Alamo Plaza and the Alamo Chapel. See attached hereto as Exhibit 'P'.

48.    On July 9, 2019, ACAC received a copy of human remains protocols adopted for the Alamo Plan which officially created the Alamo Mission Archaeology Advisory Committee ("AMAAC").  The protocol was alarming as it specifically excluded reference to the City of San Antonio's Unified Development Code which mandates that the National Historical Preservation Act procedures apply to the process which requires certain individuals such as the Plaintiffs in this case the opportunity to participate in the human remains protocol process.  Specifically, the Protocol adopted for the Alamo Plan ("Human Remains Protocol") created a committee of only federally recognized Indian tribes and excludes the Plaintiffs by making an arbitrary statement

that they are voluntarily applying the Native American Graves Protection Act ("NAGPRA").  It should be noted that the Mission San Antonio de Valero Cemetery is not a Native American burial ground.  It is a Catholic Cemetery, consecrated according to the Canon Law of the Catholic Church and has never been deconsecrated.  It contains the remains of baptized American Indians, Spanish and Mexican settlers/soldiers and the Defenders of the Battle of the Alamo (1836).  In this way Defendants have weaponized NAGPRA to exclude the American Indians most represented in the burials of Mission San Antonio de Valero, the descendants of the Spanish and Mexican settlers and soldiers and the descendants of the Alamo Defenders.  To add insult to injury, among the federally recognized tribes allowed on the AMAAC are ones who are historically responsible for the deaths of many of those buried in the Mission San Antonio de Valero cemetery.  Furthermore, most of the federally recognized tribes allowed on the AMAAC lack any historic connection to Mission San Antonio de Valero and some have very different funerary practices and beliefs regarding burials than Plaintiffs. mPut simply, the Defendants are ignoring the City of San Antonio's Unified Development Code and arbitrarily applying NAGPRA for the purpose of excluding the Plaintiffs and other lineal descendants from participation. The reason for this is obvious, the Defendants are planning to conduct their archaeological activities in a manner that violates local, state and federal laws in an attempt to reduce cost and time.  See Human Remains Protocol Attached hereto as Exhibit "Q".

49.    In addition, the Human Remains Protocol specifically states that it will follow the State of Texas cultural resources laws and laws regarding human remains as defined by the Texas Health and Safety Code. However, as stated above, the Defendants have consistently denied that a cemetery exists at the Mission, which is intellectually dishonest as experts, archaeologists as well as any reasonable person would conclude that Missions maintain cemeteries especially with

the history of the Alamo.

50.     It should also be pointed out that the Alamo Plan purposefully excludes any possibility to discover human remains as the plan only calls for 18 inches of excavation on Alamo Plaza where most burials are located, when the actual sub grade is 6 feet deep.  By intentionally digging above interments the Defendants have violated Texas Natural Resources Code §191.055(3) which requires "all operations conducted under permits or contracts set out in Section 191.054 of this code must be carried out…in such manner that the maximum amount of historic, scientific, archaeological, and educational information may be recovered and preserved in addition to the physical recovery of items."

51.     The Plaintiffs motivation has always been to ensure that their ancestors' remains are treated respectfully and preserved in the like manner as the other projects stated above.  It appears that the Defendants want to ignore any issues of remains and fast track the project with disregard for the interments and historic cemetery on the Alamo Complex.  In fact, the week of July 19, 2019, excavations under the new protocols began at the Alamo, with the GLO/ATI still publicly denying the existence of a cemetery on the site. Therefore, Plaintiffs were compelled to seek relief in this Court.

52.     Finally, on September 7, 2019, Plaintiffs were denied use of the Alamo Chapel for religious purposes, and informed by Defendants that they would be excluded from the use of the Alamo Chapel from this point forward, despite it having been used by the tribal community for religious practice in the past.

### E.     FIRST CLAIM FOR RELIEF

### (Equal Protection—Fourteenth Amendment)

Plaintiffs hereby incorporate by reference all stated paragraphs.

53.     By reason of the aforementioned policy, created, adopted, and enforced under color of state law, Defendants have unconstitutionally deprived Plaintiffs of the equal protection of the law guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, in that Defendants are preventing Plaintiffs from participating in the excavation even though the members of the Tap Pilam Coahuiltecan Nation, San Antonio Missions Cemetery Association and Raymond Hernandez are next of kin.  Further, there is no doubt that all other similar projects currently and, in the past, have utilized human remains protocols that allowed the next of kin to participate. However, in this case Defendants have voluntarily adopted NAGPRA and ignored the City of San Antonio's Unified Development Code which mandates procedures and protocols under 36 CFR Part 800 of the National Historic Preservation Act. These actions deprive Plaintiffs of rights and privileges afforded them under local, state and federal laws and discriminates against them based on their national origin. Such voluntary selective application of NAGPRA results in the exclusion of Plaintiffs, who are next of kin and entitled to participate.

54.     Further, the Defendants are publicly stating that there is no cemetery located at the Alamo.  This assertion is intellectually dishonest and being used solely to skirt federal, state and local laws designed to protect historic cemeteries.  It is common knowledge that every Spanish Colonial Mission established and maintained a cemetery, and there is ample evidence that a cemetery was established and continues to exist at the Alamo.  In fact, the surviving burial book of Mission San Antonio de Valero contains over 1,300 entries. Most of these burials are of

American Indians, but the book also records burials of Presidio Soldiers, settlers and servants of various racial categories.  Further, the "Alamo Cemetery" was recorded in 2005 in the Bexar County Cemetery Survey as Cemetery ID BX-C299 and appears on the THC Historic Sites and Archaeology Sites Atlases as occupying the totality of the current Alamo Plaza.  In addition, on or about October 15, 2018, the TPCN and the San Antonio Missions Cemetery Association filed a Notice of Unknown or Abandoned Cemetery in the Real Property Records of Bexar County, Texas. Further, on or about October 30, 2018, Plaintiffs submitted a Historical Texas Cemetery Application for the Mission San Antonio de Valero Cemetery ("Application") to the Texas Historical Commission, which was granted on May 10, 2019, resulting in a Declaration of Dedication by the THC filed in the Real Property Records of Bexar County stating that "The Texas Historical Commission, an agency of the State of Texas, does hereby certify and declare: that a cemetery deemed worthy of recognition for its historic associations…has been recognized by the Texas Historical Commission as a Historic Texas Cemetery…" and included a map of the cemetery which includes all of Alamo Plaza and the Alamo Chapel. Defendants' absurd stance that a cemetery does not exist at the Alamo is solely an attempt to skirt the Texas Health and Safety Code, the City's Unified Development Code and federal statutes which protect cemeteries and require the notification and inclusion of next of kin in the archaeological process at such sites.  There is no doubt that the Defendants are purposely making spurious claims to exclude the Plaintiffs from the process at all costs.

55.     Further, the Texas Historical Commission has issued permits for projects in the past and required archival studies to find out about cemeteries.  Specifically, the THC has always required a cemetery boundary delineation study to discover the boundaries of cemeteries when they are not known or in question.  Specifically, Fort Bend Independent School District, Houston Texas;

Freedman's Cemetery, Dallas Texas; Milam Park, San Antonio Texas; El Luceros Camposanto Cemetery, Brownsville, Texas; Pioneer Cemetery Brazoria County, Texas; Texas Rangers Museum, Waco Texas.  In this case, the THC acknowledged the need for more study but did not require it in violation of the Texas Antiquities Code.

56.     As a direct and proximate result of Defendants' violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

### F.  SECOND CLAIM FOR RELIEF

### (First Amendment)

Plaintiffs hereby incorporate by reference all stated paragraphs.

57.     As stated above, the Plaintiffs were denied the use of the Chapel for religious ceremony. The Alamo Chapel has been a place of religious practice for the Mission Indian community for many years.  TPCN, members of the Yanaguana Tap Pilam Native American Church of the Americas, Church of Oklahoma and various Christian denominations have been conducting an annual Sunrise Memorial Ceremony in the Alamo Chapel during *La Semana de Recuerdos* (Week of Remembrances) held each September.  Specifically, on September 7, 2019, Plaintiffs TPCN and Raymond Hernandez were denied permission to gather inside the Alamo Chapel for a prayer service which has been a tradition allowed by the Alamo for the past 24 years, despite allowing tourists and members of the public to enter.

58.     By reason of the aforementioned Free Speech Restriction, which includes Defendants' Policy, created, adopted, and enforced under color of state law, Defendants have deprived

Plaintiffs of their right to engage in protected speech in a public forum in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

59.     Defendant's Free Speech Restriction, facially and as applied to Plaintiffs' speech, is content- and viewpoint-based in violation of the Free Speech Clause of the First Amendment.

60.     Defendants' Free Speech Restriction operates as a prior restraint on Plaintiffs' speech; therefore, it comes to this Court bearing a heavy presumption against its constitutional validity.

61.     Defendants' Free Speech Restriction, facially, and as applied to Plaintiffs' speech, is unreasonable and an effort to suppress expression merely because public officials oppose the speaker's view, including the view expressed by Plaintiffs.

62.     Defendants' Free Speech Restriction, facially and as applied to Plaintiffs' Speech, offends the First Amendment by granting a public official unbridled discretion such that the official's decision to limit speech is not constrained by objective criteria, but may rest on ambiguous and subjective reasons.

63.     Defendants' Free Speech Restriction, facially and as applied to Plaintiffs' speech, provides no objective guide for distinguishing between permissible and impermissible speech in a non-arbitrary, viewpoint-neutral fashion as required by the First Amendment.

64.     In addition, the Defendants deny to the Plaintiffs the right to the free exercise of religion without unreasonable restraints.

65.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

### G.      THIRD CLAIM FOR RELIEF

### (Texas Freedom of Religion Act)

Plaintiffs hereby incorporate by reference all stated paragraphs.

66.     Sec. 110.003 RELIGIOUS FREEDOM PROTECTED. (a) Subject to Subsection (b), a government agency may not substantially burden a person's free exercise of religion. (b) Subsection (a) does not apply if the government agency demonstrates that the application of the burden to the person:

      (1) is in furtherance of a compelling governmental interest; and

      (2) is the least restrictive means of furthering that interest.

67.     As stated above, there is no doubt that the Defendants have denied Plaintiffs any involvement regarding the remains of their ancestors by only allowing federal recognized tribes to participate in the process, deny a cemetery exists, and by not requiring delineation and archaeological studies when issuing a permit.  Plaintiffs have been punitively denied the use of the Alamo Chapel to hold their prayer service for their ancestors who died at the Mission and are buried there.  Such actions by the Defendants have substantially burdened Plaintiffs free exercise of religion.

**H.      FOURTH CLAIM FOR RELIEF**

**(Due Process—Fourteenth Amendment)**

Plaintiffs hereby incorporate by reference all stated paragraphs.

68.     By reason of the aforementioned denial of a cemetery, failure to recognize proper protocols and laws that have been followed on all past projects and that are currently being followed on other projects similar to the Alamo Project, are no doubt crafted to exclude the Plaintiffs from participating in the human remains protocol and the project.  Such actions to change procedures and decisions solely for the purpose to exclude Plaintiffs from participating is not only repulsive but amounts to Defendants' Policy which was created, adopted, and enforced under color of state law, Defendants have unconstitutionally deprived Plaintiffs of the due process of law guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

69.     It is a basic principle of due process that a regulation is void for vagueness if its prohibitions are not clearly defined. Defendants' restrictions to exclude the Plaintiffs as part of the human remains protocols in place facially and as applied to Plaintiffs offends the Fourteenth Amendment's guarantee of due process by granting a public official unbridled discretion such that the official's decision to limit Plaintiffs' involvement in the process is not constrained by objective criteria, but may rest on ambiguous and subjective reasons. Defendants' denial of the Plaintiffs' participation in the project facially and as applied to Plaintiffs is unconstitutionally vague in violation of the Fourteenth Amendment.

70.     As a direct and proximate result of Defendants' violation of the Due Process Clause of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

## I.      FIFTH CLAIM FOR RELIEF

### Declaratory Judgment

71.     Plaintiffs request a Declaratory Judgment that a cemetery exists at the Alamo Complex site, that the Texas Health and Safety Code, and that the City of San Antonio's Unified Development Code applies to the project.

## J.      SIXTH CLAIM FOR RELIEF

### Injunctive Relief under Texas Natural Resources Code § 191.173

72.     Plaintiffs request Injunctive Relief under Texas Natural Resources Code § 191.173 to prevent Defendants from violating provisions of the Texas Antiquities Code that prohibit the archaeological practices being employed by Defendants to evade discovery and excavation of the historic cemetery at the Alamo Complex.

## K.      SEVENTH CLAIM FOR RELIEF

### The American Indian Religious Freedom Act

73.     The American Indian Religious Freedom Act (AIRFA) 42 U.S.C. § 1996 protects the rights of Native Americans to exercise their traditional religions by ensuring access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.  The purpose of the AIRFA is to protect and preserve for American Indians their inherent right to freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and

possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.

74.     As stated above, Plaintiff Tap Pilam Coahuiltecan Nation is a tribal community of American Indians who trace their ancestry to the Spanish Colonial Missions of Texas and Northeastern Mexico, including Mission San Antonio de Valero, which is also known as "The Alamo." Plaintiffs are the next of kin and the ancestors to the remains buried at the Alamo Mission.

75.     Plaintiffs were denied the use of the Chapel for religious ceremony. The Alamo Chapel has been a place of religious practice for the Mission Indian community for many years. TPCN, members of the Yanaguana Tap Pilam Native American Church of the Americas, Church of Oklahoma and various Christian denominations have been conducting an annual Sunrise Memorial Ceremony in the Alamo Chapel during *La Semana de Recuerdos* (Week of Remembrances) held each September. Specifically, on September 7, 2019, Plaintiffs TPCN and Raymond Hernandez were denied permission to gather inside the Alamo Chapel for a prayer service which has been a tradition allowed by the Alamo for the past 24 years, despite allowing tourists and members of the public to enter.

## L.     DAMAGES

76.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

## M.     ATTORNEY FEES

77.     It was necessary for the Plaintiffs to secure the services of Adrian A. Spears II and Art Martinez de Vara to pursue this matter and to file and litigate this lawsuit. Should Plaintiffs prevail in this matter, Plaintiffs respectfully request that the Court award reasonable and

necessary attorney's fees and costs incurred in prosecuting this suit as permitted under 42 U.S.C. § 1988 and other applicable law.

## N.    PRAYER

WHEREFORE, the Plaintiffs request that the Defendants be cited to appear and answer, and that on final trial, the Plaintiffs have the following:

A)    to declare that Defendants violated the First and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

B)    to declare that a cemetery exists at the Alamo Complex site, that the Texas Health and Safety Code, and the City of San Antonio's Unified Development Code applies to the project.

C)    to declare that defendants have violated Sec. 110.003 of the Texas Religious Freedom Protection Act.

D)    to declare that Defendants violated The American Indian Religious Freedom Act (AIRFA) 42 U.S.C. § 1996

E)    to preliminarily and permanently enjoin Defendants 1)from  violating Plaintiffs' free speech and free exercise of religion; (2) from excluding Plaintiffs' from the Human Remains Protocol, as set forth in this Complaint; (3) from proceeding with construction until the Plaintiffs' are included in the project; (4) from violating provisions of the Texas Antiquities Code that prohibit the archaeological practices being employed by Defendants to evade discovery and excavation of the historic cemetery at the Alamo Complex.

F)   to award Plaintiffs nominal damages for the past loss of their constitutional rights as set

forth in this Complaint;

G)   to award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42

U.S.C. § 1988 and other applicable law; and

H)   to grant such other and further relief as this Court should find just and proper.

Respectfully submitted,

**MARTINEZ DE VARA LAW FIRM,
PLLC**

By:   /s/: Adrian A. Spears, II
Adrian A. Spears, II
Texas Bar No. 24049318
Email: adrian@aspearslaw.com
Art Martinez de Vara
Texas Bar No. 24060230
Email:  art@mdv-law.com
PO Box 377
Von Ormy, Texas 78073
Tel. (210) 622-0323
Fax. (210) 622-4021

**ATTORNEYS FOR PLAINTIFFS**

## VERIFICATION

**STATE OF TEXAS**  §

§

**COUNTY OF BEXAR**  §

BEFORE ME, the undersigned authority, on this day personally appeared Raymond Hernandez, known to me to be the person whose name is subscribed below, and who, being by me first duly sworn, on his oath deposed and said that he is authorized to sign this verification and has read the foregoing Plaintiffs' Original Complaint and Request for Injunction, and all factual statements contained in said document are true and correct.

Raymond Hernandez

SUBSCRIBED AND SWORN TO BEFORE ME on this ___ day September, 2019 to certify which witness my hand and seal of office.

MISTY SPEARS
Notary Public, State of Texas
Comm. Expires 09-26-2020
Notary ID 126873063

NOTARY PUBLIC, STATE OF TEXAS

My commission Expires 9-26-2020